IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEDERAL INSURANCE COMPANY,  §
            Plaintiff,  §
                     §
v.  §          CIVIL ACTION NO. H-14-262
                     §
NORTHFIELD INSURANCE  §
COMPANY,  §
                     §
           Defendant.  §

## MEMORANDUM AND ORDER

In this insurance dispute, Plaintiff Federal Insurance Company ("Federal") and

Defendant Northfield Insurance Company ("Northfield") have filed cross-motions for

summary judgment.[1]  *See* Northfield Insurance Company's Motion for Summary

Judgment [Doc. # 27] ("Northfield's Motion"); Plaintiff's Motion for Partial

Summary Judgment and Memorandum of Law [Doc. # 28] ("Federal's Motion").  The

parties have filed responses and replies for each summary judgment motion.  *See*

---

[1]    In this Memorandum and Order, the caption has been corrected to reflect the current
parties.  This suit originally was brought by Pacific Indemnity Company as Plaintiff
against St. Paul Fire & Marine Insurance Company as Defendant.  Plaintiff Pacific
Indemnity Company then amended its complaint to correct a misidentification of
parties, bringing suit against Northfield Insurance Company and making no claim
against St. Paul Fire & Marine Insurance Company.  *See* Pacific Indemnity
Company's First Amended Original Complaint for Declaratory Judgment and
Damages [Doc. # 13].  Thereafter, with permission of the Court, Plaintiff again
amended its pleadings to name Federal Insurance Company rather than Pacific
Indemnity Company as the proper Plaintiff.  *See* Plaintiff's Second Amended Original
Complaint for Declaratory Judgment and Damages [Doc. # 30].

Docs. # 29, # 31, # 33, and # 34.  The motions are ripe for decision.  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that both Northfield's Motion should be **granted in part**, that Federal's Motion should be **denied**, and that judgment should be entered in favor of Northfield.

## I.     BACKGROUND

This suit is brought by one insurance company, Federal, against another, Northfield, regarding the duty to defend their common insured, Bryan C. Wagner, in a suit brought in Harris County, Texas, by ExxonMobil Corporation ("ExxonMobil") (the "Texas Suit").  In the Texas Suit, ExxonMobil alleges that Wagner and three other defendants (the "Wagner Group")[2] are contractually required to defend and indemnify ExxonMobil against claims asserted in three other lawsuits filed in Louisiana state courts (collectively, the "Louisiana Lawsuits").  Federal currently is defending Wagner against the claims in the Texas Suit, subject to a full and complete reservation of rights.  Northfield has refused a defense to Wagner in the Texas Suit. In the case at bar, Federal seeks a declaratory judgment that Northfield is required to defend Wagner in the Texas Suit and to reimburse a portion of the fees and expenses

---

[2]     The Wagner Group consists of Bryan C. Wagner, Trade Exploration Corporation, James Finley, and Duer Wagner, III.   *See* Third Amended Petition for Declaratory Judgment and Damages, *ExxonMobil Corp. v. Trade Exploration Corp. et al.*, No. 2009-60726, 189th Judicial District Court of Harris County, Tex., filed Aug. 31, 2011 (Exhibit D-4 to Northfield's Motion) ("Petition").

incurred by Federal in defending Wagner.

In the Texas Suit, ExxonMobil brings a breach of contract claim and seeks declaration of its rights under an Assignment, Bill of Sale, and Quitclaim ("Assignment") executed in 1994 between ExxonMobil and the Wagner Group.[3] ExxonMobil seeks defense and indemnity by the Wagner Group regarding all claims asserted against ExxonMobil in the Louisiana Lawsuits, as well as assumption by Wagner of all ExxonMobil's obligations regarding the properties involved in the Louisiana Lawsuits. The Petition states that the Louisiana Lawsuits, filed in 2006 and 2007, allege environmental damage arising from oil and gas operations, including damage from abandoned open wells and to ground water and aquifers.

ExxonMobil alleges in its Petition that, under the Assignment, the Wagner Group agreed to release, defend, and indemnify ExxonMobil against all liabilities connected to the subject property.[4] This indemnity expressly included claims by third

---

[3]    The Wagner Group (Bryan C. Wagner, Trade Exploration Corporation, James Finley, and Duer Wagner, III), who are the defendants in ExxonMobil's Texas Suit, collectively are the Assignee in the 1994 Assignment. *See* Assignment, Bill of Sale and Quitclaim, executed Dec. 13, 1994 (Exhibit D-1-A to Northfield's Motion) ("Assignment"). The Assignment was attached as an exhibit to ExxonMobil's original petition in the Texas Suit. Petition, at 2, ¶ 10.

[4]    Petition, at 3, ¶ 11 ("'ASSIGNEE [Wagner Group], ITS SUCCESSORS AND ASSIGNS AGREE TO RELEASE, DEFEND, INDEMNIFY, AND HOLD ASSIGNOR [ExxonMobil], ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ALL DAMAGES, LOSSES, EXPENSES (INCLUDING, BUT NOT LIMITED TO, COURT COSTS AND ATTORNEYS' FEES), CIVIL FINES, PENALTIES, AND OTHER COSTS AND
(continued...)

parties for property damage, including damages connected to or arising from plugging and abandoning wells, removal or modification of pipelines or other facilities, or restoration of the surface.[5]  The ExxonMobil Petition alleges that the Wagner Group is obligated under the Assignment to indemnify and hold ExxonMobil harmless

---

[4]    (...continued)
LIABILITIES AS A RESULT OF CLAIMS, DEMANDS, AND CAUSES OF ACTION WHETHER ARISING, MADE PRIOR TO OR SUBSEQUENT TO THE EFFECTIVE TIME, OR MANIFESTED IN LAWSUITS FILED PRIOR TO OR SUBSEQUENT TO THE EFFECTIVE TIME . . .'") (quoting Article 14 of the Assignment).

[5]    The Petition quotes Article 14 of the Assignment as covering the following:

    (1)    CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY THIRD PARTIES . . . FOR DEATH, INJURY, DAMAGE TO PROPERTY, OR FOR FAILURE TO COMPLY WITH THE EXPRESS OR IMPLIED TERMS OF A MINERAL LEASE, AND

    (2)    CLAIMS, DEMANDS, CAUSES OF ACTION, COSTS, AND EXPENSES ARISING OUT OF, OR IN CONNECTION WITH, THE PLUGGING AND ABANDONING AND REABANDONING OF ANY WELLS, REMOVAL OR MODIFICATION OF FACILITIES (INCLUDING, BUT NOT LIMITED TO, FLOWLINES AND PIPELINES), CLOSURE OF PITS, AND RESTORATION OF THE SURFACE, REGARDLESS OF WHETHER THE OBLIGATION TO PLUG, ABANDON, REABANDON, REMOVE, MODIFY, CLOSE, OR RESTORE AROSE PRIOR TO OR SUBSEQUENT TO THE EFFECTIVE TIME, WHETHER SUCH PLUGGING, ABANDONING AND REABANDONING, REMOVAL, MODIFICATION, CLOSURE OR RESTORATION WAS THE OBLIGATION OF ASSIGNOR, ASSIGNEE, OR THIRD PARTIES.

    *Id.* at 3-4, ¶ 11.

against claims for environmental damage, including "claims arising from ExxonMobil's alleged negligence, strict liability, and any obligation to comply with environmental statutes." Petition, at 5, ¶ 11. *See id*. at 7, ¶ 15. ExxonMobil cites to Article 21 of the Assignment, in which the Wagner Group agreed to "ACCEPT ALL RESPONSIBILITY AND LIABILITY FOR THE ENVIRONMENTAL CONDITION OF THE ASSIGNED PROPERTY," including costs to "CLEANUP OR REMEDIATE" in accordance with applicable law, and agreed to indemnify, defend, and hold harmless ExxonMobil "FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, . . . LOSSES, AND LIABILITIES WHATSOEVER IN CONNECTION WITH THE ENVIRONMENTAL CONDITION OF THE ASSIGNED PROPERTY OR OTHER PROPERTY AFFECTED THEREBY . . .". *Id*. at 4-5, ¶ 11 (quoting Assignment).[6]

---

[6]     ExxonMobil also quotes from Article 20 of the Assignment:

> ASSIGNEE [Wagner Group], ITS SUCCESSORS AND ASSIGNS, HEREBY AGREE TO INDEMNIFY, HOLD HARMLESS, AND DEFEND ASSIGNOR [ExxonMobil], ITS OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, FROM AND AGAINST ALL DAMAGES, LOSSES, CLAIMS, DEMANDS, AND CAUSES OF ACTION . . . BROUGHT BY ANY AND ALL PERSONS . . . ON ACCOUNT OF ANY PERSONAL INJURY, DEATH, DAMAGE DESTRUCTION, LOSS OF PROPERTY, OR CONTAMINATION OR THREAT OF CONTAMINATION OF NATURAL RESOURCES (INCLUDING, BUT NOT LIMITED TO, SOIL, AIR, SURFACE WATER OR GROUND WATER) OR OTHER THREAT TO THE ENVIRONMENT OR HUMAN HEALTH.

(continued...)

Wagner had insurance policies with both Federal and Northfield.  Federal (as well as Pacific Indemnity, the original Plaintiff in this suit) issued policies covering Wagner Oil Company over a seven year period, from 2003 through 2010.  *See* Letter dated March 16, 2011, from Chubb Group of Insurance Companies to Wagner (Exhibit C-1 to Northfield's Motion) ("Reservation of Rights Letter").  Northfield issued to Wagner Oil Company a general liability policy effective for one year, from January 31, 1999 through January 31, 2000.  *See* Commercial General Liability Policy No. NN100227 (Exhibit A to Northfield's Motion) ("Policy" or "Northfield Policy").[7]  It is this latter insurance contract that is in issue.

Federal, which currently is defending Wagner in the Texas Suit, here seeks a declaratory judgment against Northfield that Northfield also has a duty under the Policy to defend Wagner against ExxonMobil's claims in the Texas Suit.  The parties have cross-moved for summary judgment.

---

[6]      (...continued)
         *Id*. at 4, ¶ 11 (quoting Assignment).

[7]      Northfield also issued an umbrella policy to Wagner Oil Company, effective from January 31, 1999 through January 31, 2000.  *See* Umbrella Liability Policy No. NU101368 (Exhibit B to Northfield's Motion). Under the umbrella policy, Northfield had a right, but no duty, to defend Wagner.  By contrast, under the Northfield Policy at issue in this case, Northfield has a duty to defend Wagner against certain covered claims against him.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine*

*Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an

affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III.  <u>ANALYSIS</u>

The Court first addresses whether the Northfield Policy's main coverage provision triggers Northfield's duty to defend Wagner in the Texas Suit. The Court has some doubt about whether the Policy's Insuring Agreement, which covers damages "because of . . . 'property damage,'" is broad enough to trigger Northfield's duty to defend Wagner, given that ExxonMobil's claims against Wagner in the Texas Suit are for breach of the Assignment and declaratory judgment. This issue, however, is unbriefed by the parties and is not dispositive of the case at bar. To the extent the Policy covers the Texas Suit at all, the Policy's Pollution Endorsement relieves

Northfield of any duty to defend Wagner in that Suit.  Moreover, the UREC Buyback does not operate to restore coverage to Wagner in this instance.  The Court need not and does not address the Contractual Liability Exclusion.

**A.**     **Texas Law Regarding Interpretation of Insurance Contracts**

As a preliminary matter, the parties agree that Texas law applies to this dispute. *See* TEX. INS. CODE art 21.42.[8]  They further agree that Federal, as the Plaintiff, has the initial burden to show coverage under the Policy, while Northfield has the burden to show that an exclusion applies.  To the extent relevant, Federal would have the burden to establish application of any exceptions to the exclusions.  *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691-92 (5th Cir. 2010); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

Under Texas law, insurance contracts are interpreted according to general rules of contract interpretation and construction, and a court's primary concern is to ascertain the parties' true intent as expressed in the written instrument.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 271 (5th Cir.

---

[8]     TEX. INS. CODE art 21.42 provides: "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . .".  The Northfield Policy was issued in Texas to Wagner Oil Company of Fort Worth, Texas. Policy, at NF 00001.

2011).  When there is doubt regarding the duty to defend, such doubt is resolved in favor of the insured.  *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing Texas law).

When analyzing an insurer's duty to defend, Texas courts strictly follow the "eight corners rule."  *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006).  *See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011).  As stated by the Texas Supreme Court:

> Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.  The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant. Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.

*GuideOne*, 197 S.W.3d at 308 (internal citations omitted).  *See Gilbane*, 664 F.3d at 596 (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)).  The Texas Supreme Court has never expressly recognized an exception to the eight corners rule.  *See ACE*, 699 F.3d at 840.[9]   An insurer owes its insured

---

[9]      In 2004, the Fifth Circuit made an *Erie* guess that, in the "unlikely situation that the Texas Supreme Court were to recognize an exception to the strict eight corners rule," such exception would apply only "when it is initially impossible to discern whether

(continued...)

a duty to defend when the pleadings allege facts that *potentially* state at least one cause of action within the policy's coverage.  *Northfield Ins.*, 363 F.3d at 528 (applying Texas law).  *See PPI Tech. Servs., L.P. v. Liberty Mut. Ins. Co.*, 515 F. App'x 310, 313 (5th Cir. 2013).

### B.    <u>Scope of Northfield's Insuring Agreement</u>

Federal argues that Northfield owes a duty to defend and indemnify Wagner under the Northfield Policy, which was effective in 1999-2000.  The Court examines the "eight corners" of ExxonMobil's Petition in the Texas Suit and of the Northfield Policy issued to Wagner.  Federal has the burden to show that at least one of the claims against Wagner in the Texas Suit is covered under the Northfield Policy.  *See Trinity Universal*, 592 F.3d at 691-92.

ExxonMobil's Petition seeks a declaratory judgment and asserts a breach of contract claim.  ExxonMobil alleges that, based on the Assignment, Wagner is obligated to defend and indemnify ExxonMobil against liability in the Louisiana

---

[9]    (...continued)

coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."  *Northfield Ins.*, 363 F.3d at 531 (emphasis original).  In this case, the parties argue extensively about whether reference to the Louisiana pleadings is permissible as extrinsic evidence.  The Court finds it unnecessary to resolve this conflict because, as explained below, it is not here "initially impossible to discern" from the eight corners of the Northfield Policy and ExxonMobil's Petition whether coverage for Wagner is "potentially implicated."

Lawsuits, which allege environmental damage to the property subject to the parties' Assignment.  Petition, at 3, ¶ 10.  Under the Policy, Northfield insured Wagner for the following:

1.     Insuring Agreement

    a.     We [Northfield] will pay those sums that the insured [Wagner] becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages. . . .

Policy § I(1)(a), at NF 000005 ("Insuring Agreement").[10]   The Policy's Insuring Agreement then provides some limitations:

    b.     This insurance applies to "bodily injury" and "property damage" only if:

        (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

---

[10]     The Policy defines "property damage" as follows:

    a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

Policy § V(15), at NF 000020.  It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id*. § V(12), at NF 000019.  The Policy does not define the term "accident."

>    (2)    The "bodily injury" or "property damage" occurs
>           during the policy period.

*Id.* § I(1)(b).

Federal argues that, applying the eight corners rule, ExxonMobil's claims against Wagner in the Texas Suit fall under the Policy's Insuring Agreement because ExxonMobil seeks to recover for "property damage," the damage was caused by an "occurrence" (in particular, "continuous or repeated exposure to harmful conditions"), and the damage occurred during the Policy's period of 1999-2000. Northfield argues that no duty to defend has arisen because Federal cannot show that any "property damage" occurred during the 1999-2000 Policy period. For this argument, Northfield apparently relies on the fact that ExxonMobil ceased operations on the relevant property in 1994. Both parties appear to assume that, if Federal could show that some "property damage" to the assigned property occurred in the 1999-2000 Policy period, then Northfield would have a duty to defend Wagner in the Texas Suit.

ExxonMobil fundamentally seeks damages for Wagner's breach of contract (the Assignment), declarations about the scope of the Assignment in relation to the properties in dispute in Louisiana, and Wagner's assumption of ExxonMobil's obligations regarding those properties. ExxonMobil does not allege damages directly from Wagner for "property damage." Nevertheless, Northfield does not argue that the Insuring Agreement fails to cover ExxonMobil's claims against Wagner on this basis.

Presumably, this is because ExxonMobil's Petition, read at a general level, alleges that Wagner should be held liable for all damages ExxonMobil suffers "because of" "property damage" claimed in the Louisiana Lawsuits.[11]  At this level of generality, the language of the Insuring Agreement can be construed to cover these claims against Wagner.  *See generally Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 306 (5th Cir. 1973) (phrase "because of" in similar insurance policy is broad enough to cover both direct liability and indirect liability via indemnity).

In addition, because the Northfield Policy covered Wagner during the 1999-2000 Policy period only, the "property damage" for which the Louisiana plaintiffs seek recovery could all be outside the Policy's coverage period.  ExxonMobil's Petition does not directly address the issue of when the damage allegedly occurred. However, the Court questions Northfield's argument that the Policy's Insuring Agreement does not apply simply because ExxonMobil ceased operations on the relevant property in 1994.  An insurer owes a duty to defend to its insured when the

---

[11]     *See* Policy § I(1)(a), at NF 000005 (covering sums that Wagner "becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies."); Petition, at 3, ¶¶ 10-11 ("All three lawsuits in the underlying [Louisiana] litigation allege environmental damage and seek restoration and remediation of the land subject to mineral rights purchased by the Wagner Group. Pursuant to the Assignment, ExxonMobil is owed defense and indemnification from the Wagner Group in the underlying litigation."); *id.* at 8, ¶ 18(7) (seeking declaration that, pursuant to the Assignment, "the Wagner Group has assumed all obligations and liabilities of ExxonMobil under all agreements insofar as they pertain to the assigned property, including but not limited to, all liabilities for the assessment, remediation, removal and disposal of hazardous substances. . . .").

pleadings allege facts that ***potentially*** state at least one cause of action within the policy's coverage. *See Northfield Ins.*, 363 F.3d at 528 (applying Texas law); *PPI Tech. Servs., L.P.*, 515 F. App'x at 313.  And, the Court must resolve all doubt regarding the duty to defend in favor of the insured. *See Northfield Ins.*, 363 F.3d at 528.  The Court cannot say that the occurrence giving rise to the property damage for which ExxonMobil seeks indemnity (and Wagner seeks defense) did not occur, at least in part, within the Policy period.[12]

The Court therefore deems Federal to have met its burden to establish that ExxonMobil's claims against Wagner in the Texas Suit are within the Policy's Insuring Agreement.  The issue ultimately is not dispositive of the dispute before the parties because, even if Northfield has a duty to defend Wagner under the Policy's Insuring Agreement, the Pollution Endorsement excludes coverage, for reasons explained hereafter.

## C.    Pollution Endorsement

Assuming that the Policy's coverage for "property damage" requires Northfield to defend Wagner against the breach of contract and declaratory judgment claims in the Texas Suit, the Policy's Pollution Endorsement relieves Northfield of its duty to

---

[12]    The Policy's definition of "property damage" includes an "occurrence," Policy § V(15), at NF 000020, which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id*. § V(12), at NF 000019.

defend Wagner.  The Pollution Endorsement for the Northfield Policy excludes

coverage for the following:

> "Bodily injury", "property damage", "personal injury", loss of, damage
> to or loss of use of property, or any other form of liability or damages to
> which any insured [Wagner] may be subject arising out of the actual,
> alleged, or threatened discharge, dispersal, release, seepage, migration
> or escape of pollutants at any time at any location by whomsoever
> caused.

Policy, at NF 00032.[13]  Northfield has the burden to show that this exclusion applies.

*See Harken*, 261 F.3d at 471.  Northfield has cleared this hurdle.

ExxonMobil seeks indemnity in the Petition solely for damages arising from the

three Louisiana Lawsuits.  The Petition states:

> All three lawsuits in the underlying litigation allege environmental
> damage and seek restoration and remediation of the land subject to the
> mineral rights purchased by the Wagner Group.

Petition, at 3, ¶ 10.  There are no allegations in the Texas Suit that the Louisiana

Lawsuits seek other damages.[14]  The language of the Pollution Endorsement is broad

---

[13]   The Pollution Endorsement contains a "buyback," which could restore coverage in
certain circumstances to which the Pollution Endorsement applies.  Policy, at NF
00032.  Because Federal's briefing does not argue that the pollution buyback applies
in this case, the Court does not address the issue.

[14]   Federal argues that ExxonMobil's reference to "environmental damage" does not
explicitly allege that pollution caused the damage.  Federal deduces that ExxonMobil
*potentially* alleges liability for environmental damage broader than pollution and thus
outside of the Pollution Endorsement.  The Court is unpersuaded.  Federal identifies
no alternative potential cause of the alleged "environmental damage" and, moreover,
has not identified any specific portion of ExxonMobil's Petition that falls outside the
(continued...)

and clearly excludes coverage for damages arising from the "environmental damage" and "restoration and remediation" alleged in ExxonMobil's Petition.  In particular, the Pollution Endorsement excludes coverage for damage to, loss of, or loss of use of property "*or any other form of liability or damages* to which [Wagner] may be subject" *if* the damage or loss "*aris*[*es*] *out of*" harm from pollutants "*at any time* at any location by whomsoever caused."   Policy, at NF000032 (emphasis added).  The contractual liability ExxonMobil claims against Wagner is a form of "liability or damages" and that liability "arises out of" harm from pollutants.  The Court must give the phrase "arising out of" a broad interpretation.  *Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999) ("When an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general, and comprehensive interpretation. Indeed, a claim need only bear an incidental relationship to the described conduct for the exclusion to apply."). *See Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003);

---

14      (...continued)
      Pollution Endorsement.  Federal's argument does not rise above speculation and is insufficient to preclude application of the endorsement.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (court will not "look outside the pleadings[] or imagine factual scenarios which might trigger coverage"); *Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F. Supp. 238, 240-41 (W.D. Tex.), *aff'd*, 105 F.3d 656 (5th Cir. 1996) (construing similar pollution exclusion and holding that exclusion applied because factual allegations clearly sought recovery for past and future pollution "regardless of the theoretical source of the damage").

*Archie v. Acceptance Indem. Ins. Co.*, 507 F. App'x 451, 454 (5th Cir. 2013).

Under the Pollution Endorsement, Northfield is relieved of any obligation to defend Wagner against ExxonMobil's demand in the Texas Suit seeking Wagner's defense, indemnification, and assumption of duties in the Louisiana Lawsuits.[15]

### D. <u>UREC Buyback</u>

Federal argues that, even if the Pollution Endorsement bars coverage to Wagner, coverage is restored by the Policy's Underground Resources & Equipment ("UREC") Buyback, which supersedes the Pollution Endorsement in certain circumstances. The Buyback states:

> This insurance applies to "property damage" included within the "underground resources & equipment hazard" arising out of the operations performed by **you** [Wagner Oil Company] or on **your** behalf and described in this endorsement.

Policy, at NF 00028 (emphasis in original).[16]

---

[15]   This conclusion applying the Pollution Endorsement is consistent with the position previously taken by Federal and Pacific Indemnity in their March 16, 2011, Reservation of Rights Letter, with reference to a similar clause in its own insurance policy. *See* Reservation of Rights Letter (Exhibit C-1 to Northfield's Motion). In the Letter, the Chubb Group of Insurance Companies (on behalf of both Federal and Pacific Indemnity) concluded that Wagner was not indemnified against ExxonMobil's claims in the Texas Suit under an Energy Liability Policy issued by Federal because that policy had an applicable pollution exclusion. The Letter further explained Pacific Indemnity would defend Wagner in the Texas Suit under a separate Pollution Liability Policy issued to Wagner by Pacific Indemnity for 2006-07.

[16]   The UREC Buyback further defines "underground resources & equipment hazard" as "property damage" to underground oil, gas, water, or other substances; wells or other
(continued...)

Federal argues that the Louisiana Lawsuits clearly allege "property damage" by ExxonMobil and its "assigns," which include Wagner, and that these allegations in the Louisiana pleadings state a claim potentially "arising out of" Wagner's "operations" and thus within the UREC Buyback.  The Court is unpersuaded.  By its plain language, this Buyback does not apply to ExxonMobil's claims against Wagner in the Texas Suit.  The Buyback only provides coverage for certain property damage "arising out of operations performed by **you** [the insured, Wagner Oil Group]."  Policy, at NF 000028.  ExxonMobil's Petition makes no allegations about operations by Wagner.[17] Moreover, ExxonMobil is not an "assign" of Wagner.  Rather, ExxonMobil seeks indemnity from Wagner based on the ExxonMobil's contractual assignment of duties

---

[16]　　(...continued)
areas of exploration; or underground machinery or equipment.  *See* Policy, at NF 000029.  The Buyback sets the aggregate limit for UREC property damage at $1 million.  *Id.* at NF 000028; *see also id.* at  NF 000001 (declarations), NF 000013 (limits of insurance).

[17]　　Federal points out that ExxonMobil seeks broad indemnity from Wagner not only for ExxonMobil's operations, but also for various obligations and failures of Wagner.  *See* Federal's Response to Northfield's Motion [Doc. # 31], at 21-23 (citing Petition).  However, Federal does not point to any allegation by ExxonMobil seeking indemnity for Wagner's *operations*.  The Court must interpret the Petition in conjunction with the plain language of the Policy's UREC Buyback, which refers specifically to "operations performed by [Wagner]."

In addition, Federal's reference to the Louisiana pleadings is misplaced.  Under the eight corners rule, this Court is not to examine the Louisiana pleadings, which are not within the "eight corners" of the Northfield Policy and the ExxonMobil Petition, when determining whether Northfield has a duty to defend the Texas Suit.  *See GuideOne*, 197 S.W.3d at 308.

to Wagner.

Because there is no allegation in the Texas Suit that Wagner or others on Wagner's behalf performed the operations in issue, the UREC Buyback does not trigger Northfield's duty to defend in the Texas Suit.

E.      **Contractual Liability Exclusion**

The parties argue extensively about the Contractual Liability Exclusion. The Court need not address this exclusion given the holding above that the Pollution Endorsement relieves Northfield of any duty to defend Wagner in the Texas Suit. Assuming *arguendo* that Federal could prevail on its argument that the Contractual Liability Exclusion does not apply, or alternatively that Federal could prevail on its argument that the Exclusion's "insured contract" exception operates to restore coverage to Wagner under the Policy, neither issue would be dispositive, because the Pollution Endorsement still would apply to bar coverage.

IV.    **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Northfield Insurance Company's Motion for Summary Judgment [Doc. # 27] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Federal's Motion for Partial Summary Judgment and Memorandum of Law [Doc. # 28]  is **DENIED**.  It is further

**ORDERED**  that judgment is entered in favor of Northfield.  Northfield does not have a duty to defend Wagner in *ExxonMobil Corp. v. Trade Exploration Corp. et al.*, No. 2009-60726, pending in the 189th Judicial District Court of Harris County, Texas.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **22nd** day of **September, 2014**.

Nancy F. Atlas
United States District Judge